# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DENISE VAN VLIET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 C 3077 |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Illinois Department of Human Services' ("IDHS") motion to dismiss ("Motion") portions of Plaintiff Denise Van Vliet's ("Van Vliet") verified complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants IDHS' Motion.

## BACKGROUND

The Court accepts as true the following well-plead allegations from Van Vliet's Complaint. All possible inferences are drawn in Van Vliet's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

From June 2008 until October 4, 2016, Van Vliet was employed on a year-to-year contractual basis by IDHS as a Staff Sign Language Interpreter in the Division of Rehabilitation Services ("Rehab Division"). Van Vliet interpreted for her supervisor,

Richard Robarts ("Robarts"), who is deaf. Robarts himself was responsible for annually renewing Van Vliet's employment contract.

Van Vliet suffers from Post-Traumatic Stress Disorder ("PTSD"), which "substantially limited one or more major life activities, such as concentrating, thinking, communicating, and working." Her PTSD also affected "major bodily functions such as neurological and brain functions." However, at all relevant times, Van Vliet was able to perform the essential functions of her position with or without a reasonable accommodation.

In late October 2015, Andre Howard ("Howard"), Robarts' supervisor, told Robarts and Van Vliet that Van Vliet needed to "stop being over the top." Van Vliet claims that neither she nor Robarts understood what Howard was referencing. The next month, in November 2015, Howard explained to Robarts, "without Van Vliet," that he was planning on "overruling" Robarts and terminating Van Vliet's contract. Van Vliet alleges that she witnessed Howard's threat to terminate her being "signed" to Robarts.[1] Her PTSD was triggered as a result.

On December 3, 2015, Lou Hamer ("Hamer"), the Bureau Chief of the Rehab Division, "terminated" Van Vliet. Later that same morning, however, Hamer reversed Van Vliet's termination letter after she informed him that Howard's behavior had triggered her PTSD. Hamer's reversal allegedly infuriated Howard. Five days later,

---

[1] While the Complaint is difficult to understand in this regard, it appears that Van Vliet is alleging that Howard spoke to Robarts through a different interpreter during this conversation. Despite the use of a different interpreter, Van Vliet was evidently able to witness the conversation, which is how she saw the "threat of termination being signed" to Robarts.

on December 8, 2015, Howard told Robarts that he would not authorize Van Vliet's contract renewal in June 2016.

On December 30, 2015, in an email to Hamer and Assistant Bureau Chief Mary Beth Scholton ("Scholton"), Van Vliet described "the hostile work environment she was subject to" and informed the two that "she was seeking treatment as a result of the reversed termination." Hamer responded to the email by telling Van Vliet to "stop with the accusations and emails" and "let it go if there were no new issues."

The following month, January 2016, Howard began to require Van Vliet – an employee – to sign into the visitor's log every day. The same month, Robarts filed an EEOC Charge of Discrimination. Upon being notified of the charge, Howard acted as if it was Van Vliet who had filed the charge. Van Vliet alleges that on the day Howard learned of the EEOC charge, he "charged at Ms. Van Vliet in the office kitchen so aggressively that she had to step to the side to avoid" a collision. A few days later, Howard got very close to Van Vliet, yelled at her for not having her employee badge, and repeatedly interrupted her as she tried to interpret for Robarts. Van Vliet protested and told Howard to not stand so close. Van Vliet also claims that although she was not responsible for issuing her employee badge and had simply not received hers yet, she was the only party disciplined for the confrontation. Howard received no reprimand.

In March 2016, Van Vliet filed her first charge of discrimination with the EEOC. Two months later, in May 2016, Home Services Coordinator Thaddis Goss

informed Van Vliet that Howard was planning to "have her fired."  To cope with the stress of the situation, Van Vliet turned to her religion, Kriya Yoga, which she claims to hold as a sincerely held religious belief.  Van Vliet states that Kriya Yoga observes as a central tenet of its faith the idea that "God abides in everyone and everything through Karma."

Van Vliet alleges that, consistent with the recommendation of her therapist, she would write "Karma to Andre" after her name on the visitor's logs that Howard was forcing her to sign into.[2]  Scholton demanded that Van Vliet cease writing her "Karma to Andre" addendums.  To comply, Van Vliet began signing in as "Denise KTA Van Vliet."  On August 4, 2016, Van Vliet was suspended for two weeks for writing "KTA" on the visitor's logs – two months after Robarts' June 2016 renewal of Van Vliet's contract.  During her suspension, Van Vliet emailed Scholten with her concerns about the suspension's effect on Robarts' ability to communicate.

On August 19, 2016, after her suspension, Van Vliet met with Hamer "to discuss Howard's hostile behavior towards her and how this affected [Robarts]."  Van Vliet told Hamer that Howard was "triggering her" with his behavior and reiterated her concerns that her suspension affected Robarts' ability to perform his job.  Van Vliet alleges that, prior to her meeting with Hamer, she had already complained about IDHS' sign language policy and how it adversely affected Robarts.  Hamer intimated

---

[2] Although the Complaint is not explicit as to when Van Vliet began writing the "Karma to Andre" notation, the Complaint's ordering of facts suggests that the practice began sometime after Van Vliet's May 2016 discovery that Howard was planning on firing her.

that he would speak with Scholten and get back to Van Vliet, but he failed to follow up.

In a September 2016 incident,[3] Van Vliet was positioned outside Robarts' office "to perform her usual duties of sign language interpretation." Van Vliet alleges that her position outside the office was most effective for Robarts to see her interpretation. Upon seeing Van Vliet outside the door, Howard allegedly "charged at her in a threatening manner and forced her into a break room." Howard got close to Van Vliet's face, began yelling at her, and said that she "wasn't supposed to sit there" and that "her place was at [Robarts'] side." Van Vliet told Howard that his remarks and demeanor were "sexist," "dehumanizing," and "offended her," which allegedly angered Howard even further.

Van Vliet alleges that prior to the September 2016 confrontation, she had informed Howard that she would sit in the best location for accessible, effective communication with Robarts; sitting next to him was not one such location. Two days after the incident, Hamer terminated Van Vliet via letter. Van Vliet alleges that Hamer whistled when he gave her the termination letter.

In an IDHS Charge of Discrimination dated December 28, 2016 ("IDHS Charge"), Van Vliet indicated that she was discriminated against based on

---

[3] Van Vliet alleges that two days after the September 2016 incident, she was given a letter terminating her employment. However, her Complaint also states that she worked for IDHS until October 4, 2016. This presents one of two possibilities: (1) the termination letter was delivered to Van Vliet prior to October 4, but indicated October 4 as the effective date for Van Vliet's termination; or (2) the September 2016 incident in fact occurred on October 2, 2016. Because the Complaint is unclear on this portion of the timeline, the Court will continue to refer to the incident as the September 2016 incident, as it is referred to by both parties.

"Retaliation" and "Religion."[4]  Van Vliet listed the "particulars" of the discrimination as follows:

> I began my employment with Respondent in or around June 2008. My most recent position was Sign Language Interpreter. During my employment, I requested a religious accommodation. Subsequently, I was suspended. The terms and conditions of my employment changed.
>
> I believe I have been discriminated against because of my religion, Kriya Yoga, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

On April 24, 2017, Van Vliet filed her twelve-count Complaint against IDHS. Counts I, II, and III allege hostile work environment, retaliation, and termination, respectively, on the basis of Van Vliet's sex in violation of Title VII of The Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e. Count IV alleges IDHS' failure to accommodate Van Vliet's disability, while Counts V, VI, and VII, respectively, allege claims of hostile work environment, retaliation, and termination, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111. Similarly, Count VIII alleges IDHS' failure to accommodate Van Vliet's religion, while Counts IX, X, and XI, respectively, set forth claims of retaliation, suspension and termination, and hostile work environment, all on the basis of Van Vliet's religion in violation of Title VII. Finally, Count XII alleges associational discrimination in violation of the ADA. IDHS seeks dismissal of Counts I, II, V, XI, XII, and the termination portion of Count

---

[4] IDHS attached to its Motion a copy of the December 28 EEOC charge. Van Vliet addresses the document directly in her response, and nowhere does she object to the Court's consideration of the document for purposes of a 12(b)(6) ruling. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

X.  By virtue of the arguments addressed herein, the Court also considers Count III's viability.  Not at issue are Counts IV, VI, VII, VIII, IX, and the suspension portion of Count X.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case."  *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012).  The allegations in the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff need not provide detailed factual allegations, but she must provide enough factual support to raise her right to relief above a speculative level.  *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In conducting our review, we must consider not only the complaint itself, but also…documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."  *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019—20 (7th Cir. 2013).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'"  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Administrative Remedy Exhaustion

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "Nevertheless, because most EEOC charges are completed by laypersons rather than by lawyers," Van Vliet is not required to have alleged in her IDHS Charge "each and every fact that combines to form the basis of each claim in her complaint." *Id.* Rather, cognizable are any of Van Vliet's Title VII claims that "are reasonably related to one of [her] EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). Claims in a complaint are reasonably related to EEOC/IDHS charges where there exists a "factual relationship between them." *Cheek*, 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.*

### A. Count XI: Religion-Based Hostile Work Environment

To avoid dismissal of her religious claims under an administrative exhaustion theory, Van Vliet sets forth an extremely brief argument without citation to any legal authority.[5]  Van Vliet argues that her discussion in her IDHS Charge of "the suspension, the change in terms and conditions of her employment after the accommodation, and retaliation for engaging in protected activity" indicates that she was subject to a hostile work environment.  IDHS retorts that such generalized allegations do not reasonably relate to the hostile work environment detailed in Van Vliet's Complaint.  Despite Van Vliet's utter neglect in providing the Court with law supportive of Count X's inclusion, we find that the IDHS Charge propounds allegations – namely, allegations of "retaliation" and changed "terms and conditions" of employment – that are factually related to the hostile work environment described in the Complaint.

Deducing whether any legal claims can be expected to "develop from an investigation into the charges actually raised" is inherently "difficult," since it "requires speculation as to what the EEOC might or might not discover" during the investigation.  *Cheek*, 31 D.3d at 500.  Generalized allegations only compound the difficulty.  However, the Seventh Circuit has made it clear that the "creation of a hostile work environment can be a form of retaliation."  *Smith v. Northeastern Illinois University*, 388 F.3d 559, 567 n.5 (7th Cir. 2004); s*ee Knox v. State of Ind.*, 93 F.3d 1327, 1334 (7th Cir. 1996) ("No one would question the retaliatory effect of many

---
[5] Van Vliet does set forth an extensive legal standard framing the exhaustion issue in a light favorable to her.  She declines, however, to marshal any caselaw that supports the viability of her Complaint under that standard.

actions that put the complainant in a more unfriendly working environment"). Therefore, it is reasonable to expect that, if the creation of a hostile work environment can ground a retaliation claim, an investigation into a retaliation scheme could uncover evidence of a hostile work environment. Similarly, Van Vliet's inclusion in her IDHS Charge of an alleged change in her terms and conditions of employment suggests that an investigation into said change would uncover the facts of a hostile work environment as purported in the Complaint.

In *Brindley v. Target Corp.*, 761 F.Supp.2d 801, 807 (N.D. Ill. Jan. 21, 2011), a fellow Northern District of Illinois court found that a charging document sufficiently exhausted the plaintiff's administrative remedies in the hostile work environment context where the document suggested retaliation and alleged "different terms and conditions of employment, including, but not limited to, training opportunities, mentors, and wages." The *Brindley* plaintiff offered more detail in her EEOC charge than did Van Vliet, thereby providing the court the ammunition with which to assert that it was "certainly likely" that an investigation into those assertions would have led to discovery of a hostile work environment. *Id.* Although such specificity is concededly lacking here, Van Vliet's IDHS Charge is similar in that it plainly states that the terms and conditions of her employment had changed. In keeping, the Complaint alleges a number of incidents and confrontations at the workplace that troubled Van Vliet. Such conditions could well have been discovered through an investigation of the IDHS Charge's "terms and conditions" language.

We stress once more the inherent discomfiture of guessing at the hypothetical results of a hypothetical investigation.  Nonetheless, such guesswork is precisely what the legal standard requires.  Considered in a light most favorable to Van Vliet and cognizant of the admonition that "'technicalities are inappropriate in a statutory scheme like Title VII in which laymen, unassisted by trained lawyers, initiate the process,'" *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992) (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)), the Court concludes that Van Vliet's charges of retaliation and changed employment conditions are reasonably related to the allegations of a hostile work environment in her Complaint, since investigation of the former would likely have led to discovery of the latter.  Van Vliet exhausted her administrative remedies as concerns Count XI; for now, at least, the claim survives.

### B. Count X: Religion-Based Termination

As to Count X, IDHS does not contend that Van Vliet failed to exhaust her administrative remedies concerning her suspension.  Rather, IDHS seeks dismissal only of the portion of Count X attendant to Van Vliet's termination on October 4, 2016, two months after Van Vliet's August 2016 suspension.

In *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000), the Seventh Circuit granted summary judgment on a discriminatory suspension claim in favor of the village defendant where the plaintiff employee failed to exhaust his administrative remedies by neglecting to mention the suspension in his initial EEOC charge.  The EEOC charge referenced "unpleasant job assignments, lack of overtime

and failure to promote," but did not mention the suspension. Because "the suspension is a discrete action, taken at a definite time," it did not reasonably relate to the other discriminatory actions set forth in the plaintiff's initial EEOC charge. *Id.*

Here, the Court detects nothing meaningful by way of distinction to remove Van Vliet's termination pleadings from the rationale of *Conley*.[6] Whereas the hostile work environment Van Vliet alleged in the Complaint can be said to relate directly to the changed employment conditions set forth in her IDHS Charge, Van Vliet's termination claim has no such connective tissue. Like the suspension at issue here and in *Conley*, Van Vliet's termination was a discrete action, taken at a specific time. Indeed, Van Vliet describes in detail both the manner of her firing and the date of its occurrence. Had Van Vliet felt her termination was the result of discriminatory action, it would have required no lawyerly oversight to include so impactful an action in her IDHS Charge. Moreover, while an investigation into the IDHS Charge presumably would have revealed Van Vliet's firing, the allegations of her termination fail on their face to describe any of the "*same conduct*" laid bare in the IDHS Charge. *Cheek*, 31 F.3d at 501. Without any concatenation between the allegations of the IDHS Charge and the Complaint's termination language, the Court cannot conclude that Van Vliet exhausted her administrative remedies as they concerned her firing. The termination aspect of Count X is dismissed.

---

[6] Van Vliet argues that *Conley*'s posture as a summary judgment ruling renders it inapposite. Van Vliet is wrong. The Seventh Circuit's *Conley* decision was a legal one, an application of the governing law to the plain language of the complaint as it related to the allegations of the complaint. We are conducting an identical analysis with an identical assortment of information. *Conley*'s analytical framework is not only appropriate for consideration by the Court, it is essential.

## C. Sex Discrimination: Counts I, II, and III

Finally, although IDHS curiously neglected to include Counts I, II, and III in its administrative exhaustion argument, the Court finds it necessary to extend its discussion of the topic to Van Vliet's trio of Title VII sex discrimination claims. The administrative exhaustion requirement "is a condition precedent with which Title VII plaintiffs *must* comply." *Cheek*, 31 F.3d at 500 (emphasis added). "For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Id*.

Here, the Court has been provided with a single IDHS Charge – one not even attached to the Complaint, but rather provided by IDHS with its opening Motion. This IDHS Charge makes no mention of Van Vliet's gender nor even hints at some sort of sex-based discrimination. Even under the lenient reviewing standard afforded laypersons drafting charges of discriminations, no court could discern a gender-based workplace offense from a charge such as that before the Court.

Therefore, for Counts I, II, and III to survive, Van Vliet would have needed to indicate in some other charging document that she had been subjected to sex-based discrimination. On the face of her Complaint, however, Van Vliet asserts nothing of the sort. Nor does she provide anything in the way of IDHS/EEOC charges

suggesting as much. Van Vliet states that she "filed her first Charge of Discrimination with the EEOC" in March 2016. She also states that Robarts himself filed an EEOC charge around January 2016. Van Vliet provides no detail as to the contents of those charges. Indeed, she does not even reference in her Complaint the IDHS Charge supplied by IDHS in its initial Motion; had IDHS not attached the charge to its Motion, the Court would be wholly unaware of its existence.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The administrative exhaustion requirement is no mere perfunctory accessory to the Title VII statutory scheme. It is a "predicate," a "condition precedent" with which "plaintiffs must comply." *Cheek*, 31 F.3d at 500. A complaint wholly devoid of factual allegations that might give rise to the inference that Van Vliet exhausted her administrative remedies in the Title VII gender arena is incapable of sustaining her sex-based discrimination claims. Because Van Vliet has failed to demonstrate such an administrative remedy exhaustion, Counts I, II, and III are dismissed.

By way of coda, we also note our reticence in a substantive capacity to find an actionable claim based on little more than two comments of a superior to a translator that she (1) "wasn't supposed to sit there" and (2) that "her place was at [Robarts'] side." Van Vliet was a translator; her job was quite literally to be near enough to Robarts to translate for him. While our dismissal today turns on the shortcomings of

Van Vliet's assertions regarding her IDHS and EEOC charges, we would be remiss if we did not note our other genuine concerns with the pleadings.

## II.   Hostile Work Environment Claims

IDHS next contends that none of Van Vliet's hostile work environment claims, Counts I, V, and XI, are actionable. Before requesting dismissal based on the insufficiency of the pleadings, IDHS invites dismissal of Count V because the Seventh Circuit has not yet recognized a hostile work environment cause of action under the ADA. "Although we have not yet decided whether a claim for hostile work environment is cognizable under the ADA…we have assumed the existence of such claims where resolution of the issue has not been necessary. We have further assumed that the standards for proving such a claim would mirror those [for] claims of hostile work environment under Title VII." *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). We adopt the Seventh Circuit's structure here. The Court will analyze the ADA claim to see if it passes muster under a Title VII framework; only then, if it survives this initial analysis, will we address the actionability of any such claim devoid of context.

A viable hostile work environment claim requires the plaintiff to plausibly allege that: "(1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [protected characteristic] was the cause of the harassment; (3) the harassment was severe and pervasive; and (4) there is a basis for employer

liability." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016). Depending on the count, IDHS takes issue with either all or some of the first three prongs. The first and third prongs are frequently analyzed alongside one another, since alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of…employment and create an abusive working environment." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004). The Seventh Circuit calls for a totality of the circumstances analysis, elucidating several factors as crucial, including "the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Id.* And while the 12(b)(6) stage affords Van Vliet a most generous standard of review, the hostile work environment "threshold for plaintiffs is high, as the workplace that is actionable is one that is hellish." *Whittaker v. Northern Illinois University*, 424 F.3d 640, 645 (7th Cir. 2005) (internal citation and quotation marks omitted).

### A. Count V: Disability Discrimination

The first mention in the Complaint of anyone at the Rehab Division being aware of Van Vliet's PTSD is Hamer's learning, on December 3, 2015, that Van Vliet's condition was triggered by Howard's behavior prior to her first firing (that being the termination that Hamer immediately reversed upon learning of the PTSD-triggering episode). After December 3, Van Vliet was allegedly subjected to Howard's continuous aggressive behavior, which upper management allowed to

occur, and was refused disability accommodations that would not have affected business operations. Van Vliet's allegations fail, however, to ground this series of purported adverse actions in her disability.

The second element of the hostile work environment standard requires that the disability at the heart of the claim be the cause of the harassment. Van Vliet succeeds in pleading the opposite of this – that IDHS harassment triggered symptoms of her disability – but at no point does she plausibly plead that her disability caused the harassment. Van Vliet alleges that, in an August meeting, she "mentioned that Mr. Howard was 'triggering her' with his behavior." That Howard's improper behavior elicited a physical response brought on by Van Vliet's disability is patently unfortunate. But at no point does Van Vliet suggest that Howard's misbehavior was conducted *because* of her PTSD, as the governing standard requires. To conclusorily state that Van Vliet was "subjected to severe harassment due to her disabilities," without even attempting to explain how her disability led to such harassment, is a failure under the law. Because Van Vliet fails to plead her disability as the cause of her harassment, Count V is dismissed.

### B. Count XI: Religious Discrimination

Van Vliet's contention that her religion-based hostile work environment claim should survive amounts to the following: because IDHS put forth its religion argument "in the same improper fashion as its argument on the sex…claim" and used its Motion "to argue the merits of [its] case and not challenge the legal sufficiency of

the pleadings," its Motion should be denied as to Count XI. Van Vliet declines to address a single substantive argument set forth in IDHS' Motion, relying on the Court to construct arguments out of her conclusory entreaty for Count XI's survival. Arguments are waived "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). "If they are given plausible reasons for dismissing a complaint, [district court judges] are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning." *Lekas v. Briley*, 405 F.3d 602, 615 (7th Cir. 2005).

Van Vliet chose to write "Karma to Andre" on a public visitor's sign-in sheet for anyone to see. She was told to cease the practice, but instead began wedging the letters "KTA" in between her first and last name on the same visitor's log. She was summarily given a two-week suspension for this activity. On the face of the Complaint, this reads as an eminently reasonable consequence for her blatant disregard for a simple requirement. Van Vliet does not even suggest in her pleadings that she was undeserving of her suspension. IDHS suggests that its request for Van Vliet to stop writing her notations and her resultant suspension were neither objectively hostile or abusive nor so severe or pervasive as to alter the conditions of Van Vliet's employment. Van Vliet wholesale declines to submit otherwise. Van Vliet was required to plead facts giving rise to the inference of IDHS' liability; when presented with argument that she failed to do so, she was required to respond. She has

done neither.  Because Van Vliet fails to state a claim that her religion gave rise to a hostile work environment, Count XI is dismissed.


### III.    Count XII: Associational Discrimination

"Under 42 U.S.C. § 12112(b)(4), an employer is prohibited from discriminating against an employee 'because of the known disability of an individual with whom [the employee] is known to have a relationship or association.'"  *Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336 (7th Cir. 2012).  The Seventh Circuit has identified three categories – providing clear examples of each – into which associational discrimination plaintiffs fall.  The first is "expense", where an employee suffers an adverse personnel action because, for example, "his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan."  *Larimer v. Int'l Bus. Mach. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004).  The second category, "disability by association," might manifest where an "employee's homosexual companion is infected with HIV and the employer fears that the employee may also have become infected," or perhaps where "one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well."  The third and final category, "distraction," might arise where an "employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation."  *Id.*

IDHS contends that Van Vliet does not fall into any of the categories necessary to ground an associational discrimination claim under *Larimer*. Van Vliet does not disagree that she is unqualified under *Larimer*, but insists that the Seventh Circuit only intended its categorizations to highlight where plaintiffs might "generally fall." *Magnus*, 688 F.3d at 336. Van Vliet relies instead on the Code of Federal Regulation's ("Code") definition of associational disability for purposes of implementing the ADA's equal employment provisions. 29 C.F.R. § 1630.8 states that it is unlawful to discriminate against "a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a family, *business*, social, or *other relationship or association*" (emphasis added). Van Vliet maintains that she qualifies as a plaintiff because her relationship to Robarts falls under the "business" or "other relationship or association" categories.

Van Vliet offers no case law in support of her contention that the Code's language conflicts in any way with the categories identified by the Seventh Circuit. Moreover, her contention that the *Larimer* court's categories were merely advisory is discredited by the Seventh Circuit's recitation four years after *Larimer* of the elements of proof required in an associational discrimination claim. Noting that the frequently utilized burden-shifting test "is not easily adaptable to claims…for associational discrimination," the court in *Dewitt v. Proctor Hospital*, noted that a plaintiff "without direct evidence of discrimination, could prove her case by establishing" four discrete elements. 517 F.3d 944, 948 (7th Cir. 2008). The fourth element requires proof that

"her case falls into one of the three relevant categories of expense, distraction, or association." *Id*. (citing *Larimer*, 370 F.3d at 701—02).

Since *DeWitt*, district courts in this circuit have routinely held that a demonstration of qualification under a *Larimer* category is a prerequisite to establishing an associational discrimination claim. *See Aliferis v. Generations Health Care Network at Oakton Pavilion, LLC*, 2016 WL 4987469, at *5 n.8 (N.D. Ill. Sep. 19, 2016) ("To establish a prima facie case of association discrimination, a plaintiff must show that…her case falls into one of the three relevant categories of expense, distraction, or disability by association"); *Jacobs v. Winky Food Products, LLC*, 45 F.Supp.3d 869, 874 (E.D. Wis. Aug. 29, 2014) (utilizing the Seventh Circuit's "endorsed" test for evaluating an associational discrimination claim, which requires determination of whether the plaintiff's "case falls into one of the three relevant categories of expense, distraction, or association"); *and Segura v. TLC Learning Ctr.*, 2013 WL 1283827 at *3 (N.D. Ill. Mar. 26, 2013) ("To state a claim for associational discrimination under the ADA, a plaintiff must allege that…her case falls into one of the three relevant categories of expense, distraction, or association"). Van Vliet concedes that her claim does not qualify under a *Larimer* category. Under our reading of the governing standard and consistent with the reading of many of our sister courts, such qualification is prima facie required to state an associational discrimination claim. Because Van Vliet does not contest her categorical disqualification under *Larimer*, Count XII is dismissed.

**CONCLUSION**

For the reasons stated above, the Court grants IDHS' Motion and dismisses Counts V, XI, XII, and the termination portion of Count X. Via its own consideration of the pleadings, the Court also dismisses Counts I, II, and III. It is so ordered.

Dated: 1/10/2018

Charles P. Kocoras
United States District Judge